460 P.2d 704

Warner C. MILLS, Commissioner of Law
Enforcement, State of Idaho,
Plaintiff-Appellant,

v.

Carole J. SWANSON, Defendant-Respondent.

No. 10337.

Supreme Court of Idaho.

Oct. 30, 1969.

Robert M. Robson, Atty. Gen., Mack
A. Redford, Deputy Atty. Gen., Boise,
for appellant.

Michael C. Moore, Rapaich & Knutson,
Lewiston, for appellee.

DONALDSON, Justice.

On November 29, 1967, the respondent
Carole J. Swanson, was involved in a
one-car accident at the intersection of
Troy Road and Harrison Street in the City
of Moscow. Two officers of the Moscow
Police Department helped the respondent
from her automobile and upon observing
her manner of speech and the smell of
intoxicants on her breath, placed her under
arrest for driving while under the influ-
ence of alcohol. Respondent was driven
to the police station where the two of-
ficers requested several times that she
submit to a chemical test for the purpose
of determining the alcohol content in her
blood. Respondent remained silent. The
officers interpreted her silence and general
attitude as a refusal to submit to the test.
At the time of her arrest respondent was
bleeding, had lost numerous teeth, had sus-
tained head injuries and a fracture of the
periosteum. She was conscious but could
have been dazed in the opinion of the ar-
resting officer. One of the officers made
a sworn affidavit and filed a complaint

with the Department of Law Enforcement stating that the respondent had refused to submit to a chemical test of her blood.

On December 14, 1967, the Commissioner of Law Enforcement sent respondent an Order and Notice of Pending Suspension of her license to drive for refusal to submit herself to a chemical test of her blood pursuant to I.C. § 49–352. At respondent's request an administrative hearing was held on January 18, 1968 in Moscow, resulting in a finding that respondent had refused to submit to the test and an Order was issued suspending her license for a period of 90 days. On March 1, 1968 respondent filed in the district court for a review pursuant to I.C. § 67–5215 (limited review) of the determination made by the administrative agency. However the district court treated the appeal as if it were brought pursuant to I.C. § 49–334 (de novo hearing).

Based on the evidence adduced at the administrative hearing, the district court found as Amended Finding of Fact III that "After having been placed under arrest and requested to submit to a chemical test, petitioner made no definite oral statement either accepting or refusing to submit to said test." As Amended Conclusion of Law II, the district court determined that, "petitioner, Carole J. Swanson did not refuse to take a chemical test, said test provided by § 49–352 of the Idaho Code, silence being insufficient to constitute a refusal." These findings are in direct contradiction to the findings of fact made by the administrative agency that "Pursuant to Section 49–352, Idaho Code, you have refused to submit to a chemical test of the blood to determine the alcohol content of the blood, at Moscow, Idaho." It should be noted that the finding of fact made by the agency is a conclusion of law and therefore erroneous.

The Department of Law Enforcement has appealed to this court on the ground that the silence exhibited by respondent after repeated requests to submit to the chemical test pursuant to I.C. § 49–352, constituted a refusal within the meaning of the statute.

■ The principal issue in this case is whether under these facts silence in response to a request to submit to a chemical test of the blood constitutes as a matter of law, a withdrawal of the statutorily granted consent to such test, thereby warranting suspension of a driver's license pursuant to I.C. § 49–352.

This court in the case of State v. Bock, 80 Idaho 296, 308, 328 P.2d 1065, 1072 (1958), said:

"By operating a motor vehicle in this state the defendant is 'deemed to have given his consent to a chemical test'. The only way he can withdraw that consent is to expressly refuse the test. So under our law if he neither refuses nor consents, expressly, the test may be made."

In the case at bar, the respondent did not at any time expressly refuse to take the test. Expressly means in direct or unmistakable terms. Webster's Third New International Dictionary (Unabridged); Black's Law Dictionary 692 (Revised 4 ed. 1968). Expressly means declared and not merely left to implication. Magone v. Heller, 150 U.S. 70, 14 S.Ct. 18, 37 L. Ed. 1001 (1883); City & County of San Francisco v. Western Airlines Inc., 204 Cal. App.2d 105, 22 Cal.Rptr. 216 (1962). Thus where an individual has neither refused nor consented, but for some reason within the discretion of the officer, the test is not administered, it cannot be said that there was an express refusal to take the test.

In this case the facts were stipulated and there was no dispute with regard to them. However there was a dispute concerning the legal significance and effect of these stipulated facts. Phrased another way, only a question of law was presented to the district court. Since only a question of law was involved the judiciary, i. e., the district court, rather than an administrative agency, was in a better position to apply the applicable law.

We emphasize however that the question as to what constitutes a refusal to take the test must depend on the circumstances. In the case at bar, respondent, injured and in a dazed state, failed to respond to the officer's request. Under these circumstances it cannot be said that silence constituted a refusal to submit to a chemical test for determining the alcohol content in the blood. If the officer was in doubt he could have requested the respondent to sign a written authorization and waiver for the administration of the test.

■ Appellant asserts the trial court erred in its determination that I.C. § 49-334 is the exclusive appeal proceeding under I.C. § 49-352 and that the review provisions of I.C. § 67-5215 are not applicable.

On January 1, 1966, the Administrative Procedure Act, Chapter 52, Title 67, of the Idaho Code went into effect. However, I.C. § 49-334 [1] passed by the Idaho Legislature in 1961 also provided a means of review for an individual who has had his license to drive suspended by an administrative agency. The Administrative Procedure Act, provides that it,

"does not limit utilization of or the scope of judicial review available under other means of review, redress or relief provided by law." I.C. 67-5215(a), 3 Idaho L.Rev. 109 (1966).

The legislature by passage of the Administrative Procedure Act, intended to make available a uniform method of reviewing administrative action, but did not intend to abolish those methods of review already in existence.

"The real difficulty arises in cases where, following the format of the Revised Model State Act, the statute provides that it does not limit utilization of other means of review provided by law. Clearly, it was the intention of the Commissioners on Uniform State Laws that the result should be that the appellant would be able to choose between the several available methods—he could proceed under the administrative procedure act or under the particular statute relating to a named agency." Cooper, State Administrative Law 609 (1965).

■ Both provisions, I.C. § 67-5215 and I.C. § 49-334 are equally available as appeal procedures by which an aggrieved party can seek judicial review of administrative action. In this case the respondent chose to proceed under the Administrative Procedure Act. That was her prerogative and the district court's holding was error. However, whether the parties were before the district court de novo under I.C. § 49-334 or under the Administrative Procedure Act, I.C. § 67-5215, is immaterial since the district court had power under I.C. § 67-5215(g) (4) to review a question of law, and under I.C. § 67-5215(g)(5) the court had power to reverse if the findings were clearly erroneous. Since the matter was properly before the district court on a question of law and this court affirmed the district court on the question of law the issue of which procedure to follow in the district court is moot.

Judgment affirmed.

McQUADE and SPEAR, JJ., concur.

SHEPARD, J., sat at the hearing but did not participate in the opinion.

1. "49-334. *Right of appeal to court.*— Any person denied a license or whose license has been canceled, suspended, or revoked by the department except where such cancelation or revocation is mandatory under the provisions of this act shall have the right to file a petition within 30 days thereafter for a hearing in the matter in the district court in the county wherein such person shall reside and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon 30 days' written notice to the commissioner, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner is entitled to a license or is subject to suspension, cancelation, or revocation of license under the provisions of this act."

McFADDEN, Chief Justice (dissenting).

The respondent, Carole J. Swanson, after receiving the order issued by the Commissioner of the Department of Law Enforcement dated February 14, 1968 suspending her driver's license for a ninety day period, petitioned the District Court to obtain a "Judicial Review of that certain Final Administrative Decision entered by the Department of Law Enforcement" seeking a review of the Findings of Fact, Conclusions of Law and Order. Pursuant to this petition, the trial court, without taking any further evidence, reviewed the record of the hearing before Paul R. Hale, Hearing Examiner of the Department of Law Enforcement, and then entered amended findings of fact, conclusions of law and order.

In the amended findings of fact, the trial court stated:

"II

"THAT the Findings of Fact, Conclusions of Law and Order set down by the Department of Law Enforcement as a result of the hearing held by said Department failed to set forth Findings of Fact sufficient to draw Conclusions of Law.

III

"THAT after having been placed under arrest and requested to submit to a chemical test, petitioner made no definite oral statement either accepting or refusing to submit to said test."

The trial court then concluded

"I

"THAT Petitioner CAROLE J. SWANSON did not refuse to take a chemical test, said test provided by Section 49–352 of the Idaho Code, silence being insufficient to constitute a refusal. (See State v. Bock, 80 Idaho 296, 302 and 306.)

II

"THAT this court, having on its own motion raised the question of jurisdiction and constitutionality of the statute in question [I.C. § 67–5215], further finds that since by the provisions of Section 49–334, a statute which seems to be constitutional, providing for a de novo appeal that Title 67—Chapter 52 (Administrative Procedures Act) is inapplicable as being unable to modify the provisions of 49–334. Therefore the petition initiating this cause shall be treated as a stipulation of the facts, leaving for the determination of this court a question of law alone."

The trial court's approach to the issues presented by respondent's petition for "Judicial Review of that certain Final Administrative Decision entered by the Department of Law Enforcement * * * pursuant to Section 67–5215 of the Idaho Code" was erroneous. Respondent could have proceeded under the provisions of I.C. § 49–334 by an appeal from the order of suspension, but she did not do so. Instead, she elected to proceed under the provisions of the Administrative Procedure Act (Title 67, Chapter 52, Idaho Code).

I.C. § 67–5215 provides in part

"*Judicial review of contested cases.* * * * This section does not limit utilization of or the scope of judicial review available under other means of review, redress or relief provided by law. * * *."

Neither party to this appeal has submitted any authority or argument questioning the constitutionality of the Administrative Procedure Act.

The trial court at the time of presentation of the cause by the respective parties read into the record the provisions of I.C. § 67–5215(g), and then stated:

"Now, then we are going back to a question of fact, and the hearing agency below ruled adversely to this question of fact. [Whether respondent had refused to take the blood test.] Now, how can I upset this in view of the fact there is a difference of opinion here. This is what I am getting at and.

what I want you gentlemen to brief for me. As far as I can see I do not have the authority to upset that thing if there is any substantial evidence at all to sustain it."

The trial court was correct in this original interpretation of the law. I.C. § 67–5215 provides for a judicial review of an agency ruling by an aggrieved party. It provides that if an application is timely made for leave to present additional evidence, under conditions set forth, the court may require that additional evidence be submitted to the agency, which may then modify its findings and decision. The section next provides

"The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court." I.C. § 67–5215(f).

By subsection (g) it is explicitly stated that the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, although it may reverse or modify the agency ruling

"if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

It is my conclusion that this error in procedure by the trial court was further compounded by its reliance upon the case of State v. Bock, 80 Idaho 296, 328 P.2d 1065 (1958), as authority for the requirement that a person "expressly refuse" to submit to a chemical test of his blood, breath, urine or saliva. State v. Bock, supra, involved a homicide prosecution in which this court was faced with the question whether evidence of a person's refusal to submit to such a test was admissible in evidence in the criminal case. There was no issue presented to this court as to what constituted a "refusal" under I.C. § 49–352. It was admitted there that the accused had refused to submit to such a test, and this court's statement

"By operating a motor vehicle in this state the defendant is 'deemed to have given his consent to a chemical test.' The only way he can withdraw that consent is to expressly refuse the test. So under our law if he neither refuses nor consents, expressly, the test may be made." 80 Idaho at 308, 328 P.2d at 1072–1073.

was made in reference to distinguishing a statute from North Dakota cited in an opinion from that state where it was held that such evidence was not admissible unless the defendant had consented to the test.

There was nothing in State v. Bock, supra, requiring a discussion of the factual standards to determine when there has been a "refusal" to submit to the test as set forth in I.C. § 49–352. That section of our code does not use the word "expressly" and this court should not rely upon dicta from a criminal case to restrict the wording of the statute itself.

Opinions from other jurisdictions involving suspension of driving privileges for refusal to submit to a blood test have held that the "refusal" need not be an express oral or physical refusal, but rather a refusal to submit to the test can be found in ambiguous conduct or ambiguous or irrelevant statements by the individual asked to submit to the test. A total failure to cooperate with requests of police to submit to such a test was held to be a

"refusal" in Buda v. Fulton, 157 N.W.2d 336 (Iowa 1968). In Clancy v. Kelly, 7 A.D.2d 820, 180 N.Y.S.2d 923 (1958), a defendant responded to a request to submit to a blood test with the rhetorical question: "I got the smell of beer on my breath * * * is there any sense in taking the test?" There the court held that the defendant had refused to take the test. See also Pickard v. Director of Motor Vehicles, 184 Neb. 13, 165 N.W.2d 96 (1969). Similarly conditional consent to the test—conditioned upon the presence of the defendant's doctor or attorney being present—has been held to constitute a refusal to take the test. See Westmoreland v. Chapman, 74 Cal.Rptr. 363 (Cal.App. 1968); Finley v. Orr, 262 Cal.App.2d 656, 69 Cal.Rptr. 137 (1968); Shields v. Hults, 26 A.D.2d 971, 274 N.Y.S.2d 760 (N.Y. 1966).

Not under all circumstances, however, is silence to be construed as a withdrawal of consent. A refusal to submit to the test must be distinguished from an inability to submit or from an inability to respond to an inquiry as to whether one will submit. See for instance, Application of Scott, 5 A.D.2d 859, 171 N.Y.S.2d 210 (1958), in which case the defendant's false teeth prevented him from blowing up a balloon for a breath test, and Foster v. Tofany, 31 A.D.2d 987, 297 N.Y.S.2d 847 (1969), in which case there was an allegation that the defendant was unconscious at the time the request was made. In each case it becomes the duty of the trier of facts to determine whether a person was incapable of responding to a request to submit to a test and further to determine whether a person by his or her conduct or oral expression did in fact "refuse to submit to such chemical test."

The majority opinion suggests that the respondent in the present case was

"injured and in a dazed state, [and] failed to respond to the officer's request. Under these circumstances it cannot be said that silence constituted a refusal to submit to a chemical test for determining the alcohol content in the blood."

Respondent, however, never argued or suggested in the administrative hearing or lower court that the injuries she suffered in the accident were such as to make it impossible for her to accede to the request, and there is no finding of fact that she was so injured as to be unable to respond.

In the instant case the record before the hearing examiner discloses that Officer Russell of the Moscow Police Department, testifying as to events occurring while respondent was at the police station stated:

"Yes, we ask (sic) her if she would submit to a chemical test and I do believe that she was ask (sic) several times by several I know that she was ask (sic) two or three times to take it and at which time she didn't even want to take it or wouldn't even answer.

* * * * * *

Q. "* * * again calling to your attention the fact that she refused in your direct testimony refused to take a chemical test or blood alcohol test you stated that she refused to answer you, this is a fact that she didn't answer you at all.

A. "She wasn't giving any answers to that she was talking about other things and she never did give us an answer one way or the other

Q. "Alright [sic], in other words she didn't give you a refusal at all she just didn't answer your question isn't this true?

A. "Yes, she never answered it anyway."

Officer Parsons of the Moscow Police, who was present during the questioning of respondent at the police station, stated:

Q. "After you were all inside again did you witness or observe Officer Russell, did you see whether or not hear

or ask Mrs. Swanson to take a chemical test or blood test?

A. "Yes.

Q. "And how many times did he ask her this?

A. "I would say three would be a conservative number.

Q. "Did you to the best of your knowledge feel she understood what he was asking her?

A. "Yes.

Q. "Do you remember if she said anything?

A. "I couldn't be sure but I believe she did refuse."

On cross-examination Officer Parsons testified:

Q. "* * * Now you say that after placing Carole Swanson under arrest here at the police station she was advised of her constitutional rights and so on and then she was asked three times in your opinion, to submit to a chemical test, but your testimony is that you think she may have refused but you're not certain isn't this true?

A. "I'm certain she refused.

Q. "Oh, you're certain that she refused.

A. "Yes I am.

Q. "You testified a moment ago that she never even replied to the question.

A. "I said that I could not be sure.

Q. "You could not be sure that she replied to the question. Well, how can you be sure that she refused.

   \*    \*    \*    \*    \*    \*

A. "Maybe I should clarify that, I'm not certain as to the terms she used in refusing.

Q. "In other words at this point what words were used is this right?

A. "This is right.

Q. "But just a moment ago sir you did reply to your question of Mr. Redford to the best of your recollection she never replied to the three times she was asked the question. If I'm wrong, correct me, but I believe this is what you testified.

   \*    \*    \*    \*    \*    \*

A. "No, I don't think that's it, Officer Russell made the statement that she didn't reply, that she did refuse to take the test.

Q. "But you have no idea what the words were?

A. "I have no idea what the words were. She did slip at times into profanity."

Mrs. Swanson on her examination, however testified that she wanted to take a blood test and that she never refused to take such a test.

This direct conflict in the testimony of the police officers and that of the respondent is proof of the propriety of the statutory admonition of I.C. § 67–5215(g) that "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."

It is my conclusion that the trial court erroneously substituted his view of the facts for that of the commissioner of law enforcement in finding

"Pursuant to Section 49–352, Idaho Code, you have refused to submit to a chemical test of the blood to determine the alcoholic content of the blood, at Moscow, Idaho."

The judgment of the district court should be reversed and the order of the commissioner of law enforcement suspending the respondent's driver's license should be affirmed.