780 P.2d 112

**Forrest L. DEXTER, Petitioner,**

v.

**IDAHO STATE BAR BOARD OF COMMISSIONERS, and Idaho State Bar, Respondents.**

No. 17488.

Supreme Court of Idaho.

July 20, 1989.

Forrest L. Dexter, Veradale, Wash., pro se.

Michael J. Oths, Boise, for respondents.

HUNTLEY, Justice.

This matter is before the Court by authority of Idaho Bar Commission Rule ("IBCR") 213.[1] Dexter asks the Court to

1. Idaho Bar Commission Rule 213(a) reads as follows:
   (a) *Grounds for Review.* Said petition shall be reviewable by the Supreme Court only if it is alleged that through the arbitrary and capricious action of the Board, or that by reason of a substantial failure to comply with the Standards and Guidelines for Drafting Bar Examination Questions or Bar Examination Grading Standards and Procedures adopted by the Supreme Court, such applicant was:

   (1) Denied admission based upon an adverse determination relative to character and fitness; or
   (2) Denied a passing grade on the Bar Examination; or
   (3) Denied a certificate of eligibility for admission upon any other grounds.
   (As amended on March 1, 1988.)

overrule the decision of the Board of Bar Commissioners denying his application to sit for the February 1988 Idaho bar examination.

## I.

Dexter is a forty-two year old graduate of Gonzaga University's School of Law, and a member of the Washington State Bar. He previously applied for admission to the Idaho State Bar in 1986, but was refused permission to sit for the bar examination on character and fitness grounds. That decision was not appealed.

On September 18, 1987, Dexter filed his application to sit for the Idaho February 1988 bar examination. The application was referred to the Idaho State Bar's ("ISB's") Committee on Character and Fitness, which recommended that Dexter's application be denied. The Commissioners ruled, on January 9, 1988, that Dexter's application should be denied. Dexter asked for reconsideration of that ruling, pursuant to IBCR 209(c), and was granted a hearing on April 8, 1988. Following completion of the hearing, the Commissioners voted to affirm their previous decision. The currently pending decision of the Commissioners states, in part:

> After full consideration the Board voted unanimously (with President Nye abstaining for procedural reasons) to affirm its previous decision, i.e., that you have exhibited conduct substantially evidencing an inclination to violate reasonable rules of conduct and to fail to exercise substantial self-control which meet the standard for disqualification set forth in Idaho Bar Commission Rule 208(e)(7) and (8).

## II.

Before we examine the Commissioners' conclusion that Dexter is not fit to be a member of the Idaho State Bar, it is necessary to review the structure of authority pertaining to matters related to admission and membership in the Idaho State Bar.

■ The Idaho Supreme Court has inherent power over admission to practice law, discipline of persons admitted, and disbarment in Idaho. *In re Edwards,* 45 Idaho 676, 690, 266 P. 665 (1928). Pursuant to the authority granted to the Commissioners in I.C. § 3–408, the Commissioners promulgate proposed rules governing admission to practice and membership in the Idaho State Bar. These rules are subject to the approval of this Court. Rules authorizing the board to act in an administrative capacity and as an arm of the Supreme Court, with the power to make investigations and return to the Supreme Court its findings and conclusions thereon, are not unconstitutional. *In re Edwards,* 45 Idaho 676, 266 P. 665 (1928).

The legislation providing for creation of the Board of Commissioners contains the following statement of purpose:

> Recognizing that the practice of the legal profession is a privilege granted by the state and not a natural right of the individual, it is deemed necessary as a matter of business policy and in the interests of the public to provide laws and provisions covering the granting of that privilege and its subsequent use, control and regulation to the end that the public shall be properly protected against unprofessional, improper and unauthorized practice of law and unprofessional conduct of members of the bar.

I.C. § 3–401. Quite recently, the Supreme Court of Iowa articulated the same principle as follows: " 'The right to practice law is not a natural or constitutional right, but is in the nature of a privilege or franchise.' *In re Disbarment of Meldrum,* 243 Iowa 777, 51 N.W.2d 881, 884 (1952)." *In re Peterson,* 439 N.W.2d 165 (Iowa 1989). The *Peterson* court further explained that this principle is complemented by an important caveat.

> However, the right to practice law is not a matter of grace. We cannot exclude a person from the practice of law for reasons that contravene the due process or equal protection clauses of the United States Constitution. *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957); see also Annotation, Good Moral

Character of Applicant as Requisite for Admission to Bar, 64 A.L.R.2d 301 (1959).

We turn to the matter of the standard appropriate for reviewing the Commissioner's denial of permission to sit for the bar examination. To prevail at this level of review, Dexter must show this Court that the Commissioners acted in an arbitrary and capricious manner in denying his application. IBCR 213(a).[2] Dexter bears the burden of proving that the Commissioners acted arbitrarily and capriciously just as he bore the burden of proving that he was of good moral character before the Commissioners. IBCR 203(a)(2) states:

(a) Qualifications. An attorney applicant, in order to be permitted to take the bar examination, must show *to the satisfaction of the Board of Commissioners* that he or she * * * (2) is a person of good moral character. (Emphasis added).

Additionally, IBCR 219(f) states:

(f) Burden of Proof. The burden to prove that he is qualified for and entitled to admission to the Bar shall be upon the applicant.

█ Dexter asserts that the Board of Commissioners' failure to formulate proper findings of fact and conclusions of law violates Idaho law and renders the decision inherently arbitrary and capricious. Dexter asserts that the Commissioners' failure to formulate written findings of fact prevented him from rebutting any specific allegations, assertions or evidence of inadequate moral character. Dexter claims that bar applicants must be given reasonable opportunity to defend themselves against charges, *Martin B. v. Comm. of Bar Exrs. of State Bar*, 33 Cal.3d 717, 190 Cal.Rptr. 610, 661 P.2d 160 (1983); *State v. Bowen*, 48 Wash.App. 187, 738 P.2d 316 (1987). Further, Dexter claims that his position is reinforced by Idaho Administrative Procedure Act § 67–5212 which provides:

A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact ... shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings ...

Dexter finds further support in *Mills v. Holliday*, 94 Idaho 17, 480 P.2d 611 (1971), a drivers license suspension case wherein the Court stated that absent findings of fact, the court has nothing upon which to base a determination of whether the administrative agency's conclusions of law are justified.

We agree that the Commissioners' failure to issue findings of fact and conclusions of law was in error. The procedure to be used in character and fitness determinations is not governed by I.C. § 67–5212 since this section does not apply to the Commissioners because they are a part of the judicial rather than the executive branch. *See* I.C. § 67–5201(1). Nonetheless, the United States Supreme Court has held that "the requirements of procedural due process must be met before a State can exclude a person from practicing law." *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1179–80, 10 L.Ed.2d 224, 229 (1963). *Willner* dealt with a case where an applicant had passed the bar examination, but was denied admission to practice because of his character and fitness. While the instant case deals with Dexter's application to take the bar examination, his interest in becoming an Idaho lawyer is the same as Willner's was to become a New York lawyer. Dexter was entitled to due process of law before denial of his application to take the bar examination. Thus, even though IBCR 209(f) merely requires that the Commission "enter its decision affirming or reversing its previous action within fourteen (14) days," the Commissioners have a duty to formulate findings of fact and conclusions of law so that a reviewing court may have a basis to conduct meaningful review.

This Court has held that findings of fact are necessary to fulfill the requirements of due process of law. *Cooper v. Bd. of*

___

2. *See* note 1, *supra,* this opinion.

*County Com'rs of Ada County*, 101 Idaho 407, 411, 614 P.2d 947, 951 (1980). We have also held that reasons must be given where the interest at stake is substantial, where the administrative cost of providing the reasons would be minimal and where no ancillary disruptive effect of administrative efficiency would occur. *Bowler v. Board of Trustees*, 101 Idaho 537, 543, 617 P.2d 841, 847 (1980).

Here, the failure of the Commission to make findings of fact deprived Dexter of his right to due process of law. His interest in practicing law in Idaho is a substantial interest. The administrative cost of making findings of fact would be minimal. There would be no ancillary disruptive effect on the administrative efficiency of the Commission.

The attempt by the Commission to state findings of fact in its brief did not fulfill this requirement. While the brief was submitted on behalf of the Commission, it was authored by bar counsel. The findings must be those of the Commission rendered as part of the required procedures before the Commission, not as part of the presentation of the Commission to this Court in justification of its conclusionary decision.

The need for articulation of reasoned, supportable findings in the context of moral character determinations is widely recognized.

> The current administration of moral character criteria is, in effect, a form of Kadi justice with a procedural overlay. (Fn. *See M. Weber, Bureaucracy*, in From Max Weber: Essays In Sociology 196, 216–21 (H. Gerth & C. Mills eds. 1946) (defining Kadi justice as informal judgments rendered according to individual decisionmaker's ethical or practical valuations).) Politically nonaccountable decisionmakers render intuitive judgments, largely unconstrained by formal standards and uninformed by a vast array of research that controverts the premises on which such adjudication proceeds. This process is a costly as well as empirically dubious means of securing public protection. Substantial resources are consumed in vacuous formalities for routine applications, and non-routine cases yield intrusive, inconsistent, and idiosyncratic decision-making. Examiners generally lack the resources, information, and techniques to predict subsequent abuses with any degree of accuracy. Only a minimal number of applicants are permanently excluded from practice, and the rationale for many of those exclusions is highly questionable. (Footnote included.)

Rhode, *Moral Character as a Professional Credential*, 94 Yale L.J. 491, 584–85 (1985). The Commissioners carry a great responsibility and, in its execution, they wield tremendous power. The bases for decisions need to be made explicit in order to make those decisions subject to meaningful review.

Therefore, we remand this matter to the Commission with instructions that the Commission make findings of fact stating particularly what acts or omissions of Dexter make him unfit to practice law in Idaho.

BISTLINE and JOHNSON, JJ., concur.

SHEPARD, J., sat but did not participate due to his untimely death.

BAKES, Chief Judge, concurring specially:

I concur in the remand of this case to the Board of Commissioners of the Idaho State Bar to promulgate findings of fact and conclusions of law. However, I do not agree that these findings of fact and conclusions of law are constitutionally mandated, as the majority opinion seems to state. The decision of the United States Supreme Court in *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), does not hold that findings of fact and conclusions of law are constitutionally mandated. Our own case of *Cooper v. Board of County Commissioners of Ada County*, 101 Idaho 407, 614 P.2d 947 (1980), held that where the board of county commissioners failed to provide notice of its second meeting regarding appellant's application, and where no transcribable verbatim record of the proceed-

794

ings was kept, and where the board failed to make specific findings of fact and conclusions upon which its decision was based, procedural due process was denied. However, that does not establish that the mere failure to make findings of fact and conclusions of law alone would have been a constitutional due process violation. In the later case of *Bowler v. Board of Trustees,* 101 Idaho 537, 617 P.2d 841 (1980), a case relied on in the majority opinion, this Court said, "[D]ue process does not require a statement of reasons for every decision affecting a liberty or property interest." 101 Idaho at 543, 617 P.2d at 847. Numerous examples exist in the judicial process in which decisions are made without the benefit of findings of fact and conclusions of law, and no violation of constitutional procedural due process results. This Court held in *State v. Osburn,* 104 Idaho 809, 663 P.2d 1111 (1983), that findings and reasons for the imposition of a particular sentence, although helpful, are not "mandatory." In the area of awarding attorney fees, our own rules require written findings for an award of attorney fees under I.C. § 12–121, I.R.C.P. 54(e)(2), but not when attorney fees are awarded pursuant to any other section of the Idaho Code. *Devine v. Cluff,* 110 Idaho 1, 4, 713 P.2d 437, 440 (Ct.App.1986) ("[F]indings are required under Rule 54(e)(2) only when a court awards attorney fees pursuant to I.C. § 12–121."). Finally, juries decide cases involving some of the most critical decisions made in the entire judicial system, but they are not constitutionally required to make findings of fact.

The Board of Commissioners of the Idaho State Bar, when it processes and rules upon petitions for admission to take the bar examination, operates under rules promulgated and proposed by it which, when approved by this Court, are the standards by which applicants for admission to the bar of this Court are evaluated. If applicants meet the standards set out in the rules, they are admitted to practice law by order

of this Court. The standard of review by this Court is whether or not the commission's action is arbitrary and capricious.[3] Bar Commission Rule 213(a). While the Bar Commission Rules do not expressly require the commission to make findings of fact in ruling upon a petition for permission to take the bar examination, the absence of such findings makes it difficult to make an arbitrary and capricious analysis. If the standard was merely whether there was substantial evidence to support the Bar Commission's decision, as is the case in a review of a jury's verdict, I would vote to affirm this case. There is substantial evidence to support the Bar Commission's conclusion in this case. However, where the standard of review is arbitrary and capricious, a statement of reasons is necessary in order for this Court to properly carry out its appellate review.

Accordingly, I believe that under our ultimate supervisory authority for the admission to practice before the bar of this Court, it is appropriate for the Court to require findings of fact in order that we may better perform the evaluation of the Bar Commission's actions required by Rule 213(a). Accordingly, I concur in the remand of this matter to the Bar Commission to set out the reasons for its decision.

---

**3.** Black's Law Dictionary (5th ed. 1979), defines arbitrary and capricious as the "[c]haracterization of a decision or action taken by an administrative agency or inferior court meaning willful and unreasonable action without consideration or in disregard of facts or without determining principle."